UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PACIFIC EMPLOYERS INSURANCE
COMPANY, et al.,

                    Appellants,

    v.                                                  6:07-CV-00303
                                                             (LEK)
AGWAY LIQUIDATING TRUSTEE,

                    Appellee.

_____

**<u>DECISION and ORDER</u>**

       Appellants Pacific Employers Insurance Company, ACE American Insurance Company, Bankers Standard Fire & Marine Insurance Company, Illinois Union Insurance Company, and Insurance Company of North America (hereinafter collectively referred to as "ACE") appeal the Bankruptcy Court's September 14, 2006 order denying their motion to compel arbitration and stay the Liquidating Trustee's ("LT") motion to fix their claim.

**I.      FACTS**

       The underlying facts are not in dispute. Appellants issued various high deductible and retrospectively rated workers compensation, business automobile, and general liability insurance policies (the "Policies") on behalf of Debtor, Agway, Inc., and its subsidiaries (hereinafter collectively referred to as "Agway" or "Debtor"). The Policies were issued pursuant to a Combined Multi-Line Program Agreement. The Policies required Agway to pay, with respect to each covered occurrence, the first $1 million in losses or expenses incurred. Under the Program Agreement, Agway was required to

provide collateral security to ACE concerning Agway's obligations to cover the first $1 million in losses. The Program Agreement further provided that "[a]ny controversy, dispute, claim or question arising out of or relating to this agreement, including without limitation its interpretation, performance or non-performance by any party, or any breach thereof . . . shall be referred to and resolved exclusively by three arbitrators through private, confidential arbitration . . . ."

On October 1, 2002, Agway filed for Chapter 11 relief under the Bankruptcy Code. On May 21, 2003, the Bankruptcy Court entered an order approving a settlement agreement entered into between ACE and Agway. Among other things, the settlement agreement recognized ACE's right to draw upon the collateral to the extent Agway did not satisfy its obligations under the Program Agreement. The settlement agreement also provided that the Program Agreement was to remain in full force in effect. The settlement agreement further provided that, in the event the collateral was insufficient to secure Agway's pre-petition obligations, ACE would have an allowed general unsecured claim in the bankruptcy proceeding.

On May 29, 2003, ACE filed a proof of claim, which it amended in March 2006. By order entered April 28, 2004, the Second Amended Joint Plan of Liquidation was confirmed. Shortly thereafter, the LT filed a motion for an order fixing ACE's claim. Concerned that the LT would also seek to reduce the amount of collateral held by ACE, ACE took the position that any disputes concerning the amount of collateral held was subject to arbitration under the Program Agreement, rather than resolution through a bankruptcy claims estimation proceeding. Stated otherwise, ACE fears that the LT is seeking to fix the amount of ACE's allowed claim and use that figure to determine the amount of collateral ACE could maintain under the Program Agreement. Accordingly, ACE filed a motion to stay the LT's motion and compel arbitration.

The Bankruptcy Court concluded that, among other things:

- the Arbitration Motion seeks to compel arbitration of both the amount of collateral required under the agreements between Agway, Inc. and ACE and the Claim Objection;

- it is inappropriate to first arbitrate the amount of the collateral required under the parties' agreement and then determine the allowed claim amount in this Court because it is the fixing of the claim in the first instance that determines the need for collateral;

- the parties' arguments with respect to the application of the parties' agreements, the Plan, and the application of 11 U.S.C. § 502(e)(1)(B) to ACE's proof of claim and the collateral required under the parties' agreements, can be made with equal force in the Claims Objection proceeding as well as any arbitration;

- judicial economy is served by resolving all issues in a single forum;

- the court had core jurisdiction over the claims estimation proceeding;

- the court had the authority to determine the allowed amount of the creditor's claim by applying provisions of the Bankruptcy Code, the Plan, and/or the parties agreements; and

- it was making no findings with respect to the issue of collateral.

Order at pp. 2-3.  ACE now appeals the Bankruptcy Court Order.

**II.     STANDARD OF REVIEW**

Bankruptcy Rule 8013 provides, inter alia, that a bankruptcy court's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." FED. R. BANKR. P. 8013; see R.M. 18 Corp. v. Aztex Assocs., L.P (In re Malease 14FK Corp.), 351 B.R. 34, 40 (E.D.N.Y. 2006).  A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Mitchell, 966 F.2d 92, 98 (2d Cir. 1992).  A bankruptcy court's legal conclusions are subject to a de novo review.  Capital Communications Fed. Credit Union v. Boodrow, 126 F.3d 43, 47 (2d Cir. 1997). Matters left to the discretion of the bankruptcy court are reviewed for an abuse of discretion.  Id.

**III.    DISCUSSION**

ACE contends that the Bankruptcy Court improperly denied its motion to stay the LT's motion to fix ACE's claim and improperly declined to refer the issues concerning the determination of collateral to arbitration.  "Disputes that involve both the Bankruptcy Code and the Arbitration Act often present conflicts of 'near polar extremes: bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach toward dispute resolution.'" MBNA Am. Bank v. Hill, 436 F.3d 104, 108 (2d Cir. 2006) (quoting U.S. Lines, Inc. v. Am. SS. Owners Mut. Prot. & Indem. Ass'n, Inc. (In re U.S. Lines, Inc.), 197 F.3d 631, 640 (2d Cir. 1999)). "Bankruptcy courts generally do not have discretion to refuse to compel arbitration of 'non-core' bankruptcy matters, or matters that are simply 'related to' bankruptcy cases." Hill, 436 F.3d at 108. "As to these matters, the presumption in favor of arbitration usually trumps the lesser interests of bankruptcy courts in adjudicating non-core proceedings." Id.

> Bankruptcy courts are more likely to have discretion to refuse to compel arbitration of core bankruptcy matters, which implicate more pressing bankruptcy concerns. However, even as to core proceedings, the bankruptcy court will not have discretion to override an arbitration agreement unless it finds that the proceedings are based on provisions of the Bankruptcy Code that "inherently conflict" with the Arbitration Act or that arbitration of the claim would "necessarily jeopardize" the objectives of the Bankruptcy Code. . . . The objectives of the Bankruptcy Code relevant to this inquiry include the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders.

Id. (internal quotation and citation omitted).

Here, the LT's motion to fix the allowed amount of ACE's claim clearly is a core proceeding. See 28 U.S.C. § 157(b)(2)(B). It invokes substantive rights created under the Bankruptcy Code that, by their nature, could only arise in the context of a bankruptcy case. Hill, 436 F.3d at 108-09. Accordingly, the LT's motion to fix the allowed amount of ACE's claim is properly before the Bankruptcy Court.

The next question is whether the Bankruptcy Court improperly denied ACE's motion to stay the LT's motion to fix the allowed amount of ACE's claim. This Court sees no reason why the claims estimation proceeding needs to be stayed pending the determination of the collateral amount. The Court understands ACE's argument that, if it is determined at arbitration that the amount of collateral it is holding is sufficient, then it will not have an allowed general unsecured claim, and its claim in the Bankruptcy Court will be "moot". Appellant's Reply Br. at 1 ("[B]ecause the parties agreed that ACE could only have an 'allowed' claim against the bankruptcy estate if the third-party collateral currently held by ACE was not sufficient to satisfy the insured's obligations (including obligations for future losses and expenses), the sufficiency of the collateral provided should be arbitrated first. If the arbitrators determine ACE is entitled to hold the same or a lesser amount of collateral than ACE is

currently holding, then there will be no need for ACE to continue pursuing its claim against the bankruptcy estate - it will be moot."). For that reason, it may make sense to determine the amount of collateral first. That being said, if, as ACE argues, the Program Agreement provides for the calculation of collateral without regard to the Bankruptcy Code, then any determination in the Bankruptcy Court fixing the amount of ACE's claim should be irrelevant to a proceeding determining the amount of collateral. Moreover, inasmuch as ACE is not arguing that the claims estimation process is referable to arbitration[1] and the LT has expressly stated that it "does not seek a return of collateral," Appellee's Br. at 9, the motion to fix ACE's claim pending before the Bankruptcy Court is a separate and distinct proceeding from any efforts by ACE to determine the amount of collateral to which it is entitled to hold under the Program Agreement.[2] Accordingly, there is no basis under the Arbitration Act to stay the claims estimation proceeding pending an arbitration of the amount of collateral.[3]

However, this does not resolve the issue of whether the determination of the amount of collateral allowed to be maintained by ACE is referable to arbitration. The LT argued, and the Bankruptcy Court concluded, that the amount of ACE's allowable claim should be determined first by the Bankruptcy Court because the allowable claim determines the need for collateral. Order at ¶ 2.

---

[1] ACE "has expressly stated in its papers that it is not trying to litigate the 'allowed' amount of its claim against the bankruptcy estate assets, but only the dispute regarding the amount of collateral being held by ACE for the insured's obligations with regard to current and future loss development and future losses. The disputed amount of collateral held by ACE should be determined by arbitration...." Appellant's Reply Br. at 9. See also Appellant's Reply Br. at 2 ("ACE moved for arbitration of the parties' dispute regarding the amount of third-party collateral it is holding. . . .").

[2] As ACE argues, "[t]he LT's motion to 'fix' the allowed claim against estate assets . . . is not the same as arbitrating the amount of third-party collateral that ACE is entitled to hold in accordance with the provisions of the insurance agreements." Appellant's Reply Br. at 8-9.

[3] The Court understands that, under the Program Agreement, ACE may be entitled to hold collateral that takes into account future loss development and future losses. As a practical matter, however, it is curious why it is important to ACE to determine collateral outside the bankruptcy proceeding because the bankruptcy proceeding may well fix and determine the debtor's and, thus, ACE's, exposure to future claims. If future claims against the debtor are precluded, then ACE's potential exposure is fixed and the amount of collateral necessary to secure its interests becomes a known certainty.

ACE argues that the amount of collateral that may be maintained by it should be determined in arbitration because the amount of collateral is not determined by the Bankruptcy Code claims estimation process but by reference to the Program Agreement.  This is because the parties entered into a settlement agreement (approved by the Bankruptcy Court) that expressly provided that the Program Agreement would remain in full force and effect.  Among other differences, the Program Agreement allows for the determination of collateral by taking into consideration future loss development, whereas, under the Bankruptcy Code, such future claims may be precluded or restricted.

This Court need not resolve this issue because it was not ruled on by the Bankruptcy Court.  As stated by the Bankruptcy Court from the bench, "this Court will deny the motion of ACE **to compel arbitration of the claims estimation** motion presently pending before the Court. . . . **I'm not making any finding with regard to the issue of collateral**. . . ."  Tr. at 41-42 (emphases added).  The Court's written Order expressly provides that "[t]he Court makes no findings with respect to [the] issue of collateral because at this point in time the Claim Objection is not about the issue of collateral, but is simply a claim estimation or claims determination motion."  It, therefore, follows that, because the Bankruptcy Court did not issue a ruling concerning whether the issue of collateral was subject to arbitration, ACE may make an appropriate application to the Bankruptcy Court.

**IV.   CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED**, that the September 14, 2006 Order of the Bankruptcy Court is **AFFIRMED** insofar as the Bankruptcy Court properly concluded that the LT's motion to fix ACE's claim was properly before it and not subject to arbitration and there was no basis for the Bankruptcy Court to stay the adjudication of that motion

**ORDERED**, that ACE's Appeal (Dkt. No. 1) is **DENIED**; and it is further

**ORDERED**, that, if it chooses, ACE may make an application to the Bankruptcy Court requesting arbitration of the amount of collateral only; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED: February 05, 2008
Albany, New York

Lawrence E. Kahn
U.S. District Judge